787 F.2d 1371
 41 Fair Empl.Prac.Cas. 1590,
44 Fair Empl.Prac.Cas. 847,
40 Empl. Prac. Dec. P 36,213,
40 Empl. Prac. Dec. P 36,314
Robert P. ALEXANDER, Plaintiff-Appellant,
v.
CITY OF MENLO PARK; Mike Bedwell, City Manager of City of
Menlo Park, Defendants-Appellees.
Robert P. ALEXANDER, Plaintiff-Appellee,
v.
CITY OF MENLO PARK, Defendant-Appellant.
 Nos. 84-2150, 84-2189.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 11, 1985.
Decided April 24, 1986.
As Amended on Denial of Rehearing June 24, 1986.
 
 Louis Highman, San Francisco, Cal., for plaintiff-appellant.
 John R. Cosgrove, Jorgenson, Cosgrove, Siegel & McClure, Menlo Park, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before BROWNING, Chief Judge, FARRIS and NELSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert Alexander appeals a judgment against him on his Title VII claim and an award of only nominal damages on his section 1983 claim, in a suit against the City of Menlo Park, California. The City appeals the award of attorney's fees to Alexander's counsel. We affirm in part and reverse in part.
 
 I.
 
 2
 Alexander, a black man, served as Youth Services Facility Director for Menlo Park. The City Council voted to abolish the position. Mike Bedwell, City Manager, offered Alexander the choice of being laid off or accepting a probationary promotion to the job of Recreation Supervisor II. Alexander accepted the new job.
 
 
 3
 During Alexander's probation, he had several confrontations with Mary Leydon, his department head. At the end of the probationary period Leydon found Alexander's performance inadequate and recommended he be terminated. Bedwell terminated Alexander.
 
 
 4
 Alexander sued, alleging causes of action under 42 U.S.C. Secs. 1981 (1982) and 1983 (1982), and Title VII, 42 U.S.C. Secs. 2000e-2 (1982) and 2000e-3 (1982).
 
 
 5
 After trial, the district court held Alexander had been denied procedural due process in violation of section 1983. The court ruled that when Alexander was terminated from the probationary position, under City rules he "had a right to be returned to" his earlier job or another at the same level; and, if no such job was available, he "was entitled to bumping rights." The court found Alexander had been wrongfully denied these "bumping rights" as to the jobs of gym director or night clerk. The court computed Alexander's back pay award at the level of these jobs, divided the amount by two "[b]ecause his efforts in mitigation of damages appear to be less than vigorous," subtracted the amount already paid to Alexander as unemployment insurance, and awarded Alexander $11,114.03.
 
 
 6
 The court rejected Alexander's Title VII claim because he had failed to rebut the City's evidence of nondiscriminatory employment practices and had offered no evidence of retaliatory discharge. The court rejected Alexander's section 1981 claim without discussion.
 
 
 7
 On Alexander's motion, the court ordered a new trial confined to the issue of damages. After trial, the court reduced the damage award to one dollar on the ground that the City's failure to accord Alexander the right to bump into the gym director or night clerk jobs caused no "compensable injury" because he would not have taken either job. The court awarded Alexander $21,508 in attorney's fees and $744.18 in costs. Both sides appeal.
 
 II.
 
 8
 City Rules provide that a probationary "employee deemed unsatisfactory for [appointment to the permanent] position shall return to prior classification and non-probationary status." Alexander therefore had a right to be returned to a job in the same classification as his prior job. However, as noted, the City Council had abolished the position of Youth Services Facility Director and the City had no other position in that classification.
 
 
 9
 Alexander contends his former position was not "formally" abolished at the time he should have been returned to it after failing the probationary promotion. The record shows unequivocally, however, that the City Council abolished the position of Youth Services Facilities Director before Alexander accepted the promotion. The Council did not have to do so again.
 
 III.
 
 10
 Since Alexander could not be returned to his original job or one in the same classification, he was entitled under City Rules either to bumping rights or, if he had no bumping rights or chose not to exercise them, to severance pay.
 
 
 11
 City Rules would permit Alexander "to displace a less senior employee in the same department who occupies a position which the more senior employee is qualified to occupy in the judgment of the department head" unless the department head and City Manager determine that the less senior employee has special skills such that displacement would impede or impair the operation of the department.
 
 
 12
 The district court found Alexander could not bump into the Recreation Supervisor I position held by Aaron Johnson, because "neither [Leydon nor Bedwell] would have approved [his] displacement of Aaron Johnson or of any employee outside of the ... department."Although the district court's language did not track City Rules exactly, it is evident the court found that Bedwell and Leydon had determined Alexander was not qualified for the job of Recreation Supervisor I and that Johnson had "special skills" without which the operation of the department would be impaired.
 
 
 13
 The evidence before the court was sufficient to support such findings. Leydon testified Alexander was not qualified for the Recreation Supervisor I job in part because he did not know how to prepare lesson plans which were an important part of the job. (It was largely because of this inability that she had recommended Alexander be terminated from his probationary position.) She also testified the Recreation Supervisor I job required developing a new program and was more difficult than the Recreation Supervisor II job, which involved working with existing programs. She doubted Alexander's ability to work far from close supervision and assistance and to fit in at Belle Haven, a predominantly black community, because of his view that that community was treated differently from the rest of the city.
 
 
 14
 In contrast, the only evidence suggesting Alexander was qualified was his past experience and receipt of favorable recommendations as Youth Services Facility Director (offset by Bedwell's testimony that Alexander had not performed well in that position) and his promotion by Bedwell and Leydon to Recreation Supervisor II. Alexander offered only uncorroborated testimony that as Youth Services Facilities Director he successfully developed new programs, and hired and supervised assistants.
 
 
 15
 Johnson's special skills included a masters degree in Recreation Administration, special talent dealing with children and preparing programs for them, and the "ability to deliver information to the City Council ... regarding the post." Leydon testified she "couldn't have been more pleased" with his work and her testimony suggested replacing him would interfere with the working of the Parks Department. Alexander offered no evidence to the contrary.
 
 IV.
 
 16
 The district court held Alexander was wrongfully deprived of his right to bump into the next less-senior classification--specifically, the job of gym director or night clerk.
 
 
 17
 Alexander had a legitimate claim of entitlement to bumping rights to particular positions under City Rules, and thus a constitutionally protected property interest. See Board of Regents v. Roth, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972). Under the test established by Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), Alexander was deprived of that property interest without due process. The weight of "the private interest," id., involved was substantial--Alexander's opportunity to continue his employment, maintain his income, and protect his reputation. See, e.g., Jordan v. City of Lake Oswego, 734 F.2d 1374, 1376 (9th Cir.1984). The "risk of an erroneous deprivation," Mathews, 424 U.S. at 335, 96 S.Ct. at 903, was also substantial. Bedwell testified he did not offer Alexander bumping rights as to the jobs of gym director or night clerk because he thought Alexander would feel "demean[ed and] angry." Such subjective assessments of another's potential emotional reactions are often inaccurate. Alexander himself testified that he would have accepted the jobs. The "[g]overnment's interest," Mathews, 424 U.S. at 335, 96 S.Ct. at 903, in the procedure followed was negligible. Neither the financial nor operational cost of affording Alexander the opportunity to take one of the two jobs was significant.
 
 
 18
 The City argues that Alexander suffered no loss because he would not have accepted either of the two available positions had they been offered. Whether Alexander suffered loss, however, has no bearing on whether he was denied due process. See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978).
 
 
 19
 The City's claim that Alexander knew his bumping rights but chose not to exercise them is also unavailing. The record strongly suggests Alexander was unaware of his bumping rights and therefore unable to exercise them.
 
 
 20
 Nor did Alexander fail to exhaust his right to an administrative appeal. None was available to him. City Rules did not permit an appeal from a failure of probation, a layoff, or an informal discharge. Only a formal discharge is appealable, and a denial of bumping rights cannot be so characterized. Further, exhaustion of remedies is not required under section 1983. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961).
 
 
 21
 We also reject the City's claim that Alexander had already been given bumping rights when his original position was abolished and therefore was not entitled "to further reemployment rights at the expense of another employee" when he failed his probationary employment. Alexander was given no bumping rights when his original position was abolished--he was not laid off but provisionally promoted. Moreover, even if he had received bumping rights when his position was abolished he was nonetheless entitled to such rights when finally terminated; under the Rules bumping rights were mandatory whenever an employee was laid off.
 
 
 22
 The district court originally held that whether Alexander would have taken the gym director or night clerk job was relevant to mitigation of damages and on this issue the City had the burden of proof. At the new trial, however, the court held Alexander had the burden of proving he suffered compensable injury by showing he would have taken one of the two jobs if offered. We agree with plaintiff that the court erred when it shifted the burden of proof.
 
 
 23
 The due process violation was the failure of the defendants to inform the plaintiff of his right to bump into the job of gym director or night clerk. The injury suffered by plaintiff was unemployment. Whether Alexander would have exercised his bumping rights with respect to one of these jobs, had he been informed of them, raises the question whether the violation was the proximate cause of the injury.
 
 
 24
 Where a public employee is terminated without just cause, the question of proximate cause does not arise because the violation is so closely connected to the harm suffered. Where, on the other hand, a public employee is terminated with cause, but without required procedural protections (e.g., a hearing), the question of proximate cause arises--would the employee have been terminated even if the proper procedures had been observed? In such cases the Supreme Court has approved the placement of the burden of proof on the party who committed the violation. See Carey v. Piphus, 435 U.S. at 260, 98 S.Ct. at 1050.
 
 
 25
 We have followed the same rule in cases under Title VII. Where a plaintiff has proven unlawful discrimination in hiring or promotion, it is the defendant's burden to prove plaintiff would not have been hired or promoted even absent the discrimination. Nanty v. Barrows Co., 660 F.2d 1327, 1333 (9th Cir.1981); League of United Latin American Citizens v. City of Salinas Fire Department, 654 F.2d 557, 558-59 (9th Cir.1981). The reason for this rule is simple: "The burden of showing that proven discrimination did not cause a plaintiff's rejection is properly placed on the defendant-employer because its unlawful acts have made it difficult to determine what would have transpired if all parties had acted properly." League, 654 F.2d at 559.
 
 
 26
 Alexander proved the defendants violated his due process rights by failing to inform him he could bump into either of two positions. The burden is on the defendants to show Alexander would not have accepted either position absent their unlawful conduct. Because the district court improperly imposed the burden of proof on this issue on Alexander, we remand for a determination under the proper standard. See Muntin v. California Parks and Recreation Department, 671 F.2d 360, 363 (9th Cir.1982).
 
 
 27
 On remand, the district court should also determine whether Alexander suffered emotional distress as a result of the denial of his bumping rights. Harm due to "mental and emotional distress" is clearly "compensable under 42 U.S.C. Sec. 1983," providing the plaintiff "demonstrate[s] that [his] injury resulted directly from the wrongful deprivation of due process." Jones v. Los Angeles Community College District, 702 F.2d 203, 207 (9th Cir.1983); see also Carey v. Piphus, 435 U.S. at 264, 98 S.Ct. at 1052.
 
 V.
 
 28
 Alexander's Title VII claim alleged a failure to inform him of available higher paying jobs, retaliation for filing a complaint with the EEOC and criticizing the City's affirmative action program, and discriminatory treatment with respect to training and performance reviews. The district court held,
 
 
 29
 [A]ny inference of discrimination was ... wholly rebutted by the heavy weight of the evidence, which shows defendant to have conducted personnel practices in a fashion wholly free of racial bias or discriminatory intent....
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 [P]laintiff's failure of probation was not the result of retaliatory discrimination, but of plaintiff's failure, after repeated notice, to perform a significant part of his job.
 
 
 33
 These findings are not clearly erroneous. In short, Alexander failed to show any causal link between his protected activity--his complaints and EEOC charges--and defendants' failure to advise him of his bumping rights. See Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982). There is ample evidence that the reasons behind any adverse employment action were Leydon's assessment of Alexander's abilities and perhaps a fair, if mistaken, belief that Alexander was not entitled to bumping rights.
 
 VI.
 
 34
 Because we remand for further proceedings that may affect the result, we do not reach the City's cross-appeal concerning attorney's fees. The award of attorney's fees is vacated, and the parties may present their contentions to the district court.
 
 
 35
 AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.