53 F.3d 338
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Jeffrey L. FORCE, a single man, Plaintiff-Appellee,
v.
CITY OF PHOENIX, a municipal corporation, Defendant-Appellant.
 Nos. 93-15983, 93-16290.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 14, 1994.
Decided April 14, 1995.
 
 1
 Before: ALARCON and HALL, Circuit Judges, and KING, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 The City of Phoenix (the "City") appeals the district court's denial of the City's motion for directed verdict as well as various evidentiary rulings and jury instructions. We affirm.
 
 I.
 
 4
 The City first challenges a portion of the jury instructions. It argues that the district court improperly saddled it with the burden of persuasion on the issue of proximate cause. It also argues that the district court misstated the standard by which it had to prove that the revocation of Sgt. Force's permit was justified.
 
 
 5
 We review de novo the question of whether a jury instruction misstates the elements that must be proved at trial. Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir.1992). If we find error, we reverse only if we conclude that the error more probably than not was harmless. Id. at 206-07 (stating the rule for civil cases).
 
 A.
 
 6
 The district court instructed the jury that the City carried the burden of persuasion on the issue of proximate cause. The district court told the jury that the City had to prove that it would have revoked Sgt. Force's permit even if there had been an adequate pre-deprivation hearing. See ER exh. L at 3. The City claims that this was error. We disagree.
 
 
 7
 The City concedes, as it must, that Alexander v. City of Menlo Park, 787 F.2d 1371 (9th Cir.1986), states the law of this Circuit. In Alexander, we held that the party that committed the due process violation carries the burden of persuasion on the issue of proximate cause. Id. at 1375. So it is in this case. The City committed the due process violation and thus shouldered the burden of persuasion on proximate cause. The district court correctly stated the law of this Circuit. See ER exh. L at 3 (instructing that "the City has the burden of persuasion on this issue [of proximate cause]").
 
 B.
 
 8
 The City also complains that the district court improperly instructed the jury on the standard governing the proximate cause determination. The district court told the jury that the City had to prove that the permit revocation was "justified by legitimate concerns that [Sgt. Force's] poor judgment constituted a threat ... to the safety of the public." ER exh. L at 3. We find no error in this instruction.
 
 
 9
 The dispute boils down to what constitutes good cause for the revocation of Sgt. Force's permit.[1] Ordinarily, we look to the written standards that govern the permit to determine what constitutes good cause for its revocation. See, e.g., Go Leasing, Inc. v. N.T.S.B., 800 F.2d 1514, 1520-21 (9th Cir.1986). The only written regulations that we can find governing Sgt. Force's permit are found in the Phoenix Police Department's General Order B-5.[2] See E.R. exh. A. These regulations imposed two requirements on Sgt. Force: (a) that he obtain an "Outside Work Permit" and (b) that he maintain a work log. Id. It appears from the record that Sgt. Force complied with both requirements. Indeed, the City does not dispute it.
 
 
 10
 The City argues, however, that it was entitled to go beyond the written standards governing the permit and take into account the judgment Sgt. Force demonstrated in conducting his business. We agree that the City has wide latitude in making decisions concerning the internal management of its police department. See Zombro v. Baltimore City Police Dep't, 868 F.2d 1364, 1369 (4th Cir.), cert. denied, 493 U.S. 850, and Thorne v. City of El Segundo, 726 F.2d 459, 470 n. 10 (9th Cir.1983). We also recognize that the City has an important interest in preserving the morale and integrity of its police department. See Fugate v. Phoenix Civil Service Board, 791 F.2d 736, 741 (9th Cir.1986).
 
 
 11
 This means that the City may manage its police department without interference from this Court when, for example, the action is necessary to protect public safety or department integrity. We would agree, therefore, that if Sgt. Force had conducted his business in such a way that jeopardized public safety, the City would have been justified in revoking his permit. But this, of course, is precisely what the district court instructed the jury. See E.R. exh. L at 3. The City's problem is that the jury found against it on this issue.
 
 
 12
 The City asks us to nullify the jury verdict on the ground that the "public safety" standard is too stringent. It urges us to adopt a much more open-ended rule, one that is not tied to public safety or, indeed, any other substantial public concern. We decline the invitation. As an initial matter, the bulk of the City's evidence on the issue of justification centered on public safety issues. The district court did not err by tailoring the jury instructions to the facts and arguments developed during the trial. See Los Angeles Mem. Coliseum Comm. v. N.F.L., 726 F.2d 1381, 1398 (9th Cir.1984).
 
 
 13
 More fundamentally, we reject the City's argument that it should be allowed to abrogate a protected property interest on the basis of its unwritten "poor judgment" standard. The City offers this standard in a vacuum. It nowhere defines what constitutes poor judgment, beyond implying that whatever it is, Sgt. Force demonstrated it. Sgt. Force, moreover, had no notice that he was expected to live up to this never-defined standard in the conduct of his business. We conclude that the City's proposed standard, as applied to this case, would invite the very unbridled official discretion that the Due Process Clause was designed to inhibit. We therefore hold that the jury instructions were proper.
 
 II.
 
 14
 The City next contends that the district court erred in refusing to give Defendant's Proposed Jury Instruction No. 13. The proposed instruction recites that Judge Broomfield previously determined that the suspension of Force's permit was justified, and instructs that plaintiff is entitled to recover only those damages flowing from inadequate process.
 
 
 15
 In an April 2, 1992 order, Judge Broomfield dismissed Force's claim for intentional interference with contractual relations on the ground that the evidence did not establish "that defendant's suspension of plaintiff's brokerage permit and its prohibition of other officers from accepting employment through plaintiff's agency was 'improper' as that term is defined in the context of claims for intentional interference.' " ER Exh. D at 6. (emphasis added) The City contends that Judge Broomfield's finding that it did not act "improperly" necessarily translates into a finding that the suspension of the permit was justified. Contrary to the City's contention, nothing in the April 2, 1992 order reasonably suggests that the court decided, or even considered, whether the City's suspension of Force's permit was justified in a substantive, constitutional sense. Thus, we find that the court's refusal to give the proposed instruction was not an abuse of discretion.
 
 III.
 
 16
 The City next contends that the district court erred with respect to certain evidentiary rulings--(1) the district court's sustaining of plaintiff's objection to the introduction of certain testimony by Chief Click at trial concerning the City's substantive justification for suspending Force's permit[3] and (2) the district court's grant of Force's motion in limine to exclude evidence concerning the internal investigation conducted by the police department.
 
 
 17
 The Court's rulings with respect to Chief Click's testimony did not constitute an abuse of discretion. We are confident that enough evidence concerning the City's substantive justifications for suspending Force's permit was allowed in that the evidentiary rulings cannot be said, more probably than not, to have tainted the verdict.[4] See Baker v. Delta Airlines, Inc., 6 F.3d 632, 639 (9th Cir.1992).
 
 
 18
 In its ruling with respect to the internal investigation conducted by the police department, the district court granted plaintiff's motion in limine "to preclude defendants from showing the results of the Internal Affairs [investigation]," but denied it "in terms of the fact that there was an investigation underway at the time of the meeting with Chief Ortega." RT 198 at 14. In its opposition to Force's motion in limine, the City stated that approximately 20 of the allegations investigated by the Internal Affairs Division were sustained, and formed the basis for plaintiff's termination. CR 155 at 4. It was these allegations the City sought to introduce as "evidence to show the reasons for [Force's] termination." These allegations were, defendant argued, relevant to the City's justifications for the continued suspension of plaintiff's permit. CR 155 at 4. After an exhaustive search, we have been unable to find in the record any description of the allegations that resulted in plaintiff's termination. Defendant has failed to include in its excerpts of record the purportedly relevant portions of the internal investigation report;[5] nor has defendant cited portions of the record containing the 20 allegations. Finally, defendant fails even to discuss the actual content of the allegations in its briefs. Therefore, we do not address this evidentiary argument. See Palmerin v. City of Riverside, 794 F.2d 1409, 1414 (9th Cir.1986) ("Our rules require that when an appeal is based upon a challenge to the admission of evidence, a copy of the pages of the reporter's transcript at which the evidence and any objection thereto is recorded must be included. We cannot review whether a district court has abused its discretion in admitting certain evidence without some documentary indication of whether and under what circumstances the disputed evidence was offered and admitted. The responsibility for designating all or part of the record for transcription rests entirely with the party seeking to contest what transpired during that part of the trial.") See also U.S. v. Beraun-Panez, 812 F.2d 578, 582 (9th Cir.1987), modified on other grounds, 830 F.2d 127 (1987) ("Because at no time did counsel identify the content of the evidence he sought to introduce, we decline to consider the government's contention.")
 
 IV.
 
 19
 Appellant next contends that the district court erred in refusing to direct a verdict in the City's favor because Force was awarded $147,713 without being required to prove that his damages were caused by an unjustified deprivation of his constitutional rights. In reviewing the district court's denial of a motion for a directed verdict this court determines "whether the evidence, considered as a whole and viewed in the light most favorable to the nonmoving party, reasonably can support only a verdict for the moving party." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir.1992) (emphasis in original).
 
 
 20
 The City's argument boils down to two main points. First, the City argues that Force was entitled to receive only nominal damages for the deprivation of procedural due process because his permit was justifiably suspended. The crux of the City's argument on this point is that Force failed to meet his burden of demonstrating that the suspension of his permit was substantively unjustified. Appellant's Br. at 28. This argument fails to recognize that the City bears the burden of proof on the issue of substantive justification. See Alexander v. City of Menlo Park, 787 F.2d at 1375 (where public employee is terminated without required procedural protections, "the question of proximate cause arises--would the employee have been terminated even if the proper procedures had been observed? In such cases the Supreme Court has approved the placement of the burden of proof on the party who committed the violation.")
 
 
 21
 Second, the City contends that Judge Broomfield's April 2, 1992 order constitutes overwhelming evidence that the suspension of plaintiff's permit was substantively justified. We reject this contention for the reasons stated in part II above. Viewed in the light most favorable to Force, we cannot say that the evidence supported only a verdict for the City.
 
 
 22
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge, District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The City has not appealed the district court's ruling that Sgt. Force had a protected property interest in the permit. See E.R. exh. C at 6-9 (pre-trial summary judgment ruling). We therefore assume, without deciding, that the district court's ruling was correct and that Sgt. Force's permit could not be terminated except for cause. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982) (describing protected property interest as an "entitlement ... which cannot be removed except "for cause")
 
 
 [2]
 If other regulations existed, the City failed to point them out to us
 
 
 [3]
 The rulings in question are as follows:
 Q: Have you seen any explanation in any testimony before the Civil Service Board, before the Court, in his depositions, or any written memorandum that he submitted to the department that justifies or explains to you that there was some misunderstanding that said--that leads you to believe that you should not have suspended those permits?
 Mr. Murphy: Objection, Your Honor. The propriety of the original decision is not the issue, due process is the issue.
 The Court: Sustained....
 Q: Chief, now that you know everything you know, what do you think about your decision?
 Mr. Murphy: Objection; irrelevant.
 The Court: Sustained. RT 199 at 248, 263.
 
 
 [4]
 Although, in the interest of brevity, we do not exhaustively set forth all relevant testimony here, the following testimony taken from the Reporter's Transcript indicates that the City was permitted to introduce testimony concerning the substantive justifications for the suspension of Force's permit
 Q: Chief, without going into the specifics or the reasons for termination, was there anything you learned from the date his work permits were suspended until today, that leads you to believe that it was improper to suspend his permits, when it was done?
 A: I believe very strongly it was the proper thing to do at the time it was suspended. I think it was appropriate, I think it had to be done. RT 199 at 248.
 I think it was an accumulation of those with each of them demonstrating poor judgment, and in different aspects: poor judgment, willing to take and put an officer at risk, physical risk, willing to put the department at some risk in terms of what we have our officers doing off duty, the types of activity, the types of job that they have, and that he appeared to be compelled to that, was the feeling we had, based on other information that were not part of the decision, but that Jeff seemed very much willing to make these decisions for financial gain. And it was not in the interest of the police department. RT 199 at 250.
 Q: With regard to the issue of Workers' Compensation, you again said in and of itself, that wasn't something that would have justified pulling his permit. What is the cumulative nature of that particular act that concerns you?
 A: I guess, as we viewed it, that Sergeant Force was willing to, at appearance, to take advantage, for his own financial gain, of officers, and in violation of the law. And certainly, if he was willing to do that, I think it brings into question any decision he makes.
 Q: Chief, with regard to the incident at the Phoenician, again, I think you even said with regard to that incident, in and of itself, it may not have justified it. What is it about the judgment he showed and what he did or didn't do on that date, caused you concern to revoke those permits?
 A: It's not even a gray area. Sergeant Force was a supervisor, he represents management in the department. He is expected to have intimate knowledge of our policies and procedures, and this wasn't even a gray area. He completely violated our policy, that you don't accept a job, unless you know what that job is. And in this particular case, that's exactly what Jeff did. RT at 199 at 252.
 Q: ... Mr. Murphy spent a lot of time on what your concerns were regarding the Phoenician. The reasons that he wrote down on the board there, are those the sole reasons, are those the sole reasons that had to do with why you believed his permits should be suspended?
 A: No. This just had to do with this particular incident. As I stated before, it was really cumulative--judgment made on some cumulative information based on the three areas that we touched on: the allegation, from what I think we all considered a credible source, in terms of the Workmen's Compensation issue; the Black Angus issue; which I was aware of.
 And each one of them, I think, added a little weight. And we reached a point here to where there was certainly sufficient information there to believe that Sergeant Force's judgment was certainly not what we would expect of an officer or supervisor in the department. ER 199 at 255.
 In addition, at oral argument the City's counsel was asked whether, other than the instances of poor judgment supporting the immediacy of the suspension, the City made a record concerning other instances of Force's poor judgment. Counsel responded that the City put on evidence concerning the workers' compensation issue and the Black Angus incident.
 
 
 [5]
 See Circuit Rule 30-1.2(a)(x) (Where an issue on appeal is based on written exhibits, excerpts of record shall include "those specific portions of the exhibits necessary to resolve the issue.")